Good morning. May it please the Court, I'm Michael Bekeshian on behalf of Plaintiff Appellant Edward Tuffly. I'd like to reserve three minutes of my time. This case concerns the names of aliens who were released from the federal government from detention during the course of removal proceedings. They were released due to fiscal uncertainty. Today we're talking about whether these names may be withheld under the Freedom of Information Act, specifically the personal privacy exemptions. This Court needs to weigh the personal privacy of the aliens versus the interests that the public has in this information. May I ask you a question, please? The Border Patrol, the ICE officers, they're now hiring an expanded number, I think 5,000. In order to do that, they're reducing the standards, including eliminating the lie detector tests. It's likely that some of those people hired will have criminal records. If one were to seek the identity of all those ICE officers and have their names made public with their records, would that be a proper request under your theory? Under our theory, right now we're talking about aliens. I know we're talking about aliens. I think there is, the names of government employees once they're hired, there is a standard if you ask for their resumes, if they're hired, their resumes and usually those names are made public. So under that type of standard on what, especially the D.C. Circuit has already concluded, those names, those resumes may be made available to the public. If the question specifically for just names of those individuals that may have been convicted of a crime, I think there's a balancing test there that would need to be done. And it would be different than the balancing test that we would have here, because I think the privacy interest for employees of the government that are put in high-stress situations would be different than potentially the aliens that are at issue in this case. Well, the purpose is, as I understand your theory, it's to see what the people are likely to do when they come out. So you can test the consequences of their release in this case. With all due respect, Your Honor, our interest is a little bit different than that. In this case, the federal government said that they were holding on to the serious criminal offenders and releasing individuals that posed a less or no public safety threat at all. Once that statement was announced and individuals were released to USA Today, this is going back almost three years, did a study, they wrote an article saying that the records they received contradicted what the government said, that the individuals being released were not a public safety risk and that they were not significant criminal offenders. The USA Today also said that ICE acknowledged the discrepancy between what their policy was and what happened in reality. And finally, the USA Today article, which is found on ER 16 and 17, said that it was impossible for them to get too many details about all the crimes that were being committed and who they were being committed by because ICE would not release the names of the individuals. So Mr. Tuffley, following seeing that USA Today story, wanted to see what the effects were, whether or not those aliens... That answers the question. You do want to see what the effects are. And therefore, the same theory would apply to the hiring of reduced, under reduced standards of ICE officers. If the federal government were to say, we will not hire anybody convicted of a crime to be a border patrol agent, and there is information or belief, a reasonable belief that border patrol agents that have criminal convictions are being hired, yes. Under the same theory... No, forget the fact of what the government says, just that they are hiring, if they are and may have criminal backgrounds. Is that not something the public would be equally interested in? The public would be interested in it, but it would be a different standard than, and a different theory than what we're arguing about today. Today, we're talking about the standard that was set up in the Favish case, that you weigh the personal privacy against, you know, whether or not there's sufficient evidence to warrant a belief by a reasonable person of an alleged government impropriety has occurred. And that's why we're seeking these names, to see if the federal government told the truth when they said they were only releasing aliens that were of no, a little to no risk to the public. Well, if that's your standard, that you're representing, or you're representing, you are from Judicial Watch, aren't you? That's correct, I'm from Judicial Watch. Well, your website tells us that of the 149 released, 80 of them have no criminal convictions at all. And of the others, they're almost all, 87% convicted of minor offenses, such as traffic offenses, shoplifting, or disorderly conduct. Only 6% of the released detainees have ever been convicted of a significant criminal offense, none of which was murder, rape, kidnapping, aggravated assault, or offenses of that nature. So that if it's only 6%, which is a lower rate than the average American citizen, what is it that makes you feel that you want to know the names of all 149 people that you'd categorize as criminal aliens, as opposed to, you know, with that lower percentage of 6% having ever been convicted of a real criminal offense? Sure, 70 of the 149 aliens that were released in Arizona were convicted of a crime. That's correct. A crime meaning things like traffic offenses? Crimes are all sorts of things. Some of those include assault, drug trafficking, larceny, weapons offense, domestic violence, and, you know, smuggling. So, yes, there's a wide range of crimes that were committed, but crimes were committed by almost 50% of the aliens that were released. And so it would be... ...totally conduct, mainly traffic offenses, or shoplifting. Are those dangerous aliens? They possibly could be. You know, Judicial Watch and Mr. Tuffley don't define what a crime is. Oh, no, you don't. That's true. So the answer is yes, most of them are traffic offenses. Well, traffic offenses could be all sorts of things. Oh, they could be terribly dangerous. Running a red light could be dangerous. Would you deport everybody who ran a red light or call them a criminal? I'm not... Have you ever run a red light? I'm not here to deport anybody. We're not advocating Mr. Tuffley's... No, we are here to define people as dangerous criminal aliens. Yes, we want the... And those are people who may have run a traffic light once. They may have run a traffic light once. They may have run a traffic light three times. They may have been drinking under the influence six times. That's a concern for the public. But we know that they didn't do any of the things that made them bad hombres. We know they didn't commit murder, rape, aggravated assault, kidnapping, any of those offenses. Those were not on the list of the records that were released to Mr. Tuffley. That is correct. Yes. That does... Judge Corman has a question. Can I ask you a question? You say on page 11 of your brief that if you got these names, you say it's imperative to know whether the released criminals appeared in any subsequent removal proceedings, committed additional crimes while under government supervision, or have been removed from the country. I'm trying to understand how would getting the names help you find that information? Sure. Without the names, we don't know who these individuals are. And so what we're looking... Suppose you got a name, John Doe. We would be able to run it through most simply Google, Lexis databases, some other databases to determine if these individuals have committed additional crimes. It is possible the government in their briefs, without citing any evidence, has said that at least some of these individuals have been deported. There are ways to access information, especially in the world today with the internet, to get a better understanding of who these individuals are so that we can go back to our original purpose, which is to see whether or not the federal government correctly told the American public that they were only going to release individuals that were not a public safety risk. You got it. As far as I can tell, you got everything you asked for, except they whited out the names or blacked out the names. So you know all of that. You're talking about whether the released criminals appeared in any subsequent removal proceedings, committed additional crimes while under government supervision. I don't know what I assume you're referring to while they were released or have been removed from the country. So you know everything you need to know about their records at the time that they were actually released. And so, as I understand it, you need the names just to search the internet to know whether they appeared at subsequent removal hearings, assuming that information is available, committed additional crimes, or removed from the country. I'm not even sure that any of that is available. You may be right. I'm not an expert at using the internet. A lot of that information is available. And the important thing to note, and what makes this case different from the many cases that the government cited to, such as Wray, Forest Service employees, Lair, even the most recent Ninth Circuit case regarding the names of foreign military personnel, is in each of those instances there was an investigative process in place to research, investigate, see whether or not the government was following through on their promises, following through on what their policy was. And there were public reports being made every year in all of those cases. And so because of that, the courts there said there was more of a privacy interest in those cases than there was a public interest, because the government was already doing that work. For example, one of the things you want the names for is whether they appeared in any subsequent removal proceedings. Could you say, as you stand here today, that there is a website that you would be able to find this information if you knew their names? It's not my understanding that there's a particular website, but there is a lot of information through Google. But specifically, I can't stand here and tell you a particular website. Do you have any knowledge of how they handle these things? Because usually they make the names confidential on removal proceedings. So how would you get the information, assuming that to be true? Sure. I mean, some of the time it's reported in the newspaper, depending on who these individuals are. Had they committed additional crimes, there would be a public interest in it. Those individuals would be removed. Is there a website that you could find whether they committed additional crimes or whether they were removed from the country? Can you point to a specific website that you would be able to use to find that information? LexisNexis provides arrest records, charging conviction records. Had they stayed in parts of Arizona, the local police officials, you can enter names into various databases there that are all made available in the public, in the sheriff's department, in the police department. You can enter individuals' names, and it will provide you information about their criminal background. We did some of that. Mr. Tuffley did some of that, along with Judicial Watch, for the individuals. In another type of case, with names of individuals, you're able to put it in and review that information. And what about whether they've been removed from the country? Is there some website that you could point to that would show that? The removal is a little bit more difficult than if they had committed additional crimes while they were here. This would also show, had these individuals not committed any additional crimes, had not been charged, had not been convicted, then the federal government was correct, was being truthful, when they put out their policy saying that they were not putting people back on the street that were a risk to the community. Had they gone back out on the street while they were still in removal proceedings and continued committing crimes, the public has a right to know that the federal government decided to release these individuals back onto the street, knowing that they had been convicted of a crime before, and there's a possibility that they were going to be ‑‑ there's a possibility that they would come in and be convicted of a crime afterwards. Now, in your brief at page 7 of your opening brief, you say, particular to this case, and then I'll skip the first part of the quote. The last part is, rather the requester must produce evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred. What is the I would point the court to pages 16 and 17 of the excerpts of records. That is the USA Today article that was provided to the government with Mr. Tuffley's original FOIA request, where the USA Today said that the records they received contracted ‑‑ or contradicted the government insurances, the individuals that they saw had been convicted. You're relying on USA Today as your authority? Yes, Your Honor. They had submitted a Freedom of Information Act request. They had received information. They reported that it contradicted the government's statements when the federal ‑‑ when asked for a comment from the federal government. The federal government said they acknowledged the discrepancy. And so the USA Today provides us with that foundation. It provides us with the evidence, based on their And so that's what we would rely on. That's what Mr. Tuffley submitted to the government when he submitted his FOIA request. It's attached to the letter. It's what he attached to, provided to the court with his declaration, the district court, on summary judgment. And that's the evidence that we're relying upon today as I stand here before you. Thank you, counsel. We'll give you a couple minutes for rebuttal. May it please the court, we've heard a lot about the public interest asserted to be at stake in this case. We haven't heard a lot about the privacy interest at stake, which the district court, we think, properly found to be a significant privacy interest. And the district court's judgment was that the interest of the requester here was marginal. It was the term that the court used. And these privacy interests that are at stake are well established. The background of prior criminal charges is something that is protected under FOIA. There's other information that was that pertains to their health situation, their family situation. And all of that would be possibly open to being tracked and associated with these individuals. The other thing that the district court alluded to was the potential for harassment of these individuals. And this is something that this court has recognized as being an appropriate concern. It's not far-fetched in the current environment, whatever one's position is on pros and cons, but there is intense controversy and intense hostility vis-a-vis persons who have entered this country illegally. And the standard that this court has set forth talks about whether there's a potential for harassment. You don't have to document it. It doesn't have to be an actuality. So while we haven't placed all our eggs in that basket, contrary to what important consideration, and it is a consideration which entered into the thinking of the district court. The second thing I wanted to say is that the nub of this case, we hear about whether the government was truthful. It's really not a matter of truth or falsity. It's a matter of criticism or contention about the judgment that was being exercised. And we all know government officials and people in non-government positions make mistakes and make errors of judgment. And what we were stressing in our brief is, well, what did the government know at the time it decided to release these individuals? And that information has been amply provided to Civilbee. So they know just as much as the government knew when it decided to release these people. Now, are there matters on which you could disagree? This person, how come they released this person? How come they released that person? You can debate that, but they already know that. Do you disagree with your opponent's contention that it is, it doesn't matter whether the judgment is false or, but that it's enough that you want to test the efficacy of the government decisions to say, so that you can reach the result of saying this was an unwise decision, let's not make a similar one in the future? Right. I think as a matter of logic, certainly seeing what actually happened, if you can track down what actually happened, you know, that might, might, you know, help. The district court said it was, you know, kind of a marginal utility. The core of the scrutiny, though, has to be what the decisionmaker knew at the time the decisionmaker acted. It's interesting and relevant, and certainly the public would be interested in saying, gee, they released individual X, and then look what happened out there. And doesn't that reflect badly on the judgment? But the critical thing, again, any time you're assessing responsibility is to look at what the decisionmaker knew at the time he or she acted. But why is that? The purpose of FOIA is to allow the public to know the facts, and it's not a question just of judging the government. It's a question of, so that you can determine, is this a good policy? In the example I gave, for instance, where they're going to hire 5,000 new ICE officers under reduced standards, you might want to know if, and they did it because of corruption cases and excessive use of force by present ICE officers. If you want to know whether it's a wise policy to reduce the standards for hiring ICE officers, isn't that a legitimate interest to know what they do when you hire ICE officers with criminal records? Your Honor, it's certainly there's an interest, and that's why the district court talked about marginally. Remember that that there's a question. I'm not questioning the ultimate outcome in this case or the balance. I'm merely looking at the question of, isn't there a legitimate argument that the public is entitled to know what the results of a policy are? We're not arguing that there's no legitimate interest. You're arguing that there is an interest, but it's marginal in this case. It's marginal, and that in a balancing process, the question is the incremental value of the information that's being provided, not that the information may have some relevance, but incrementally in the balance of the serious infringement on privacy interest in this case, is it worth it incrementally to publicize all these names? Also, this Court has been very wary under the public interest prong of the balancing test. The Court has been very wary about derivative use arguments. We need this information because we're going to take this information and then we're going to use other means of research, and that information will lead us to still other information, which, again, will shed light on what the government is doing. And so in the Forest Service case, which we've cited, and in Lahr, the Court – in fact, the Court in Lahr, I believe, specifically talked about situations where the government has released records but excised, redacted the names, and the Court was very skeptical about the public interest there and the so-called derivative use. So for those reasons, because it is a balancing test and this is an incremental – some incremental help, but only incremental, and it involves a derivative – derivative use, which the Court apparently is skeptical about, it really doesn't outweigh the privacy. And this is the thing that the counsel for civility seems to skip over. You know, oh, well, forget about the privacy interest. Look at the public interest. This, again, is a balancing process, and the privacy interests here are serious and they need to be weighed properly. So how would you distinguish union leader from this case? Union leader, I believe the Court actually – if I can find it – the Court itself distinguished union leader in the Cameron-Essie recent May 8th, I think, opinion. The Court said the evidence in union leader was at least enough to warrant a reasonable belief that the alleged government impropriety might have occurred. There, there were six people. They were convicted criminals. And the question the union leader was pursuing was why were these people at large – I think in one case for 19 years or something like that. And he said, my God, all these people, six people, criminals were at large, and if we only can find out the names, we'll contact state and local authorities. And then the state and local authorities may be able to tell us about interaction with ICE, which then would shed light on why ICE did not move more expeditiously to get rid of these folks. So it was a derivative use case, but putting the derivative use aside, the point is that there really was something there that the Court accepted as a weighty interest. That is, why did 19 years go by and this person was at large? We don't have anything like that here. And so union leader – there were other problems with the union leader decision, but accepting it on its own face, it's distinguishable. Okay. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Thank you. Going back to a union leader case, or to touch upon that briefly, you know, the Ninth Circuit recently in Kimmerer v. Nessie said that the First Circuit held there was a public interest in the aliens' identities because of evidence that the aliens had previously committed crimes or had been ordered removed but had remained in the U.S. Such evidence was at least enough to warn a reasonable belief that the alleged government impropriety might have occurred. That's what we have here. We have aliens that were released while they were going through removal proceedings. We have a USA Today article, which was provided or built upon by federal records saying that the federal government – there seemed to be some discrepancy between what the federal government said and the aliens that were actually released. ICE actually agreed with that, acknowledged the discrepancy. And so Mr. Tuffley wants to know if that also took place with the 149 aliens that were released in Arizona. With respect to the personal privacy issue, you know, Forest Service employees, the reason why they had such a – probably a higher privacy interest there was because the FOIA requesters in that case specifically wanted to contact those individuals. There were also four federal agencies that investigated the incident. It doesn't matter, does it, what the purpose of the individual who requests the information is, because that information is provided to lots of other people, such as Judicial Watch, who may well publicize that information. You may have the highest of motives, but that's really irrelevant, isn't it? It's not – it's not irrelevant, Your Honor. The purpose of the requester is not irrelevant? Well, the purpose of the requester here is to conduct research. Well, no, but that's – that's not what I'm saying. Assume a requester has the highest of motives. We can't limit this to what the purpose of the requester is, because it's information made available to all, including many who might not have such high-founded motives. I think you can – I think you can look at the motives of the requester and give significant weight to that. I think this Court has done so in both the Lair and the Forest Service employees' cases. In both of those cases, the Court specifically said that the derivative use, that the only way that this information will be helpful to the FOIA requesters is if they are – if they get the names, contact the individuals and ask them questions. The Supreme Court said the same in Wray. The Supreme Court said in Reporters' Committee whether an invasion of privacy is warranted cannot turn on the purposes for which the request of information is made. You know, Reporters' Committee was also very different, because the Court there found that there was no public interest at all for the rap sheets. I mean, we're talking about different things here. No, but nevertheless, the sentence I read to you is the Supreme Court. Whether the case was different or not doesn't matter. I'm not sure why you resist this fact. It's obvious that once you get the information, it's available to the public for any purpose. And what the effect on a person's privacy will be will not depend on your high-flown motives, but will depend on what may happen to those people as a result of the disclosure. You know, the only difference I can say with Reporters' Committee was there was no public interest. There was no – in that instance, the Supreme Court found there was no high motive for the FOIA requesters to get that information besides finding out information about the individuals whose rap sheets they wanted. There wasn't a public interest at all. Zero. In this case, the government has even said there is – they believe it's some public interest. Mr. Tuffley thinks it's a greater public interest. But those cases are very different. I think you also look at the Ray case by the Supreme Court, and in that instance too, the Court found that there wasn't a real public interest in the names of the individuals that – from Haiti. And also in that case, they said that there was no way to find out any more information except for by going to contact those individuals. Here, Mr. Tuffley has a public interest. He thinks that public interest is to determine whether or not the individuals released in Arizona were a public safety risk, which would have contradicted what the Federal Government said. And, you know, he wants to use the names to research and see whether or not the Federal Government was true to what they said. He doesn't want to contact these individuals. Judicial Watch does not want to contact these individuals. It's merely about getting to whether or not the government did what they said they were going to do and that what they did was truthful and correct. And a reasonable person would believe that there's a strong public interest in that. And Mr. Tuffley has provided evidence that this information is important, especially with the – in light of the USA Today article. Thank you, counsel. Did you have a question? Does the agency have a continuing obligation to disclose? In other words, if additional information came to their attention that one of the people released had been convicted of a crime? They don't, Your Honor. Mr. Tuffley or Judicial Watch would have to send an updated FOIA request for that, but there is – under FOIA there is no continual obligation to update the public in a since-responded-to FOIA request. How long does it take to get a response normally? It's supposed to be 20 days under the law. Very rarely does that happen. And I have FOIA litigation that's going on for a couple years. More than that. I'm talking from personal experience. I am, too. Judicial Watch, I think, has a case. It takes more than that. Thank you, counsel. Thank you, Your Honor. The case history will be submitted for decision. Thank you both for your arguments.
judges: Reinhardt, Thomas, Korman